IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SNELLBACK PROPERTIES, L.L.C., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AETNA DEVELOPMENT CORP., )<br>and AETNA DEVELOPERS, )<br>L.L.C., )<br>)<br>Defendants. ) | Judge Ronald A. Guzmán<br><br>No. 08 C 7326 |

### MEMORANDUM OPINION AND ORDER

Plaintiff contends that contamination from defendants' property has migrated to its property and seeks an injunction against them pursuant to the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972. The case is before the Court on defendants' Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss the complaint. For the reasons set forth below, the Court denies the motion.

### Background

On August 20, 2005, Aetna Developers purchased the property located at 614 Green Bay Road, Kenilworth, Illinois to be developed by Aetna Development. (Compl. ¶¶ 8-9, 13.) Because a dry-cleaning business had previously been operated there, defendants sought and obtained a No Further Remediation Letter ("NFR") from the Illinois Environmental Protection Agency ("IEPA") before buying the land. (*Id*. ¶ 16.) Under Illinois law, an NFR releases the recipient from "further responsibilities under [the Illinois Environmental Protection] Act" and constitutes *prima facie*

evidence that the covered property is not "a threat to human health [or] the environment." 415 Ill. Comp. Stat. 5/58.10(a).

In January 2007, plaintiff purchased the property at 624 Green Bay Road, Kenilworth, Illinois, which is adjacent to the Aetna property. (Compl. ¶¶ 7, 21.) Subsequently, plaintiff discovered on its property environmental contamination that it believes migrated from Aetna's property. (*Id.* ¶¶ 22-24).

On July 9, 2008, plaintiff filed suit against defendants in state court seeking injunctive relief and damages under the common-law theories of trespass and nuisance. (Defs.' Br., Ex. C, Compl.) The state action is still pending.

On December 23, 2008, plaintiff filed this suit.

## Discussion

### Jurisdiction

First, defendants argue that the NFR letter moots plaintiff's RCRA claim. It does so if it resolves the contamination dispute or eliminates plaintiff's stake in its outcome. *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 626 (7th Cir. 2007), *cert. denied*, 128 S. Ct. 2431 (2008). The NFR does neither. It releases defendants from liability under state law, not RCRA, and is *prima facie*, not conclusive, proof that Aetna's property is contaminant-free. (*See* Defs.' Mot. Dismiss, Ex. A, NFR Letter at 1.)[1] Because the NFR does not establish that the contamination on plaintiff's land did not come from defendants' property, it does not moot plaintiff's RCRA claim.

---

[1] The Court may consider evidence outside of the pleadings to determine whether plaintiff's claim is moot. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2002).

2

**Abstention**

Even if there is subject matter jurisdiction over this suit, defendants say the Court should abstain from exercising it under the doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Abstention is appropriate under that doctrine only if there are parallel suits pending in state and federal court and the following factors, on balance, favor abstention:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Tyrer v. City of S. Beloit*, 456 F.3d 744, 754 (7th Cir. 2006) (quotation omitted).

Even if the state suit is parallel to this one, an issue the Court does not decide, these factors militate against abstention. Illinois has not assumed jurisdiction over either party's property and, as defendants acknowledge, this Court is no less convenient for the parties than state court. (*See* Defs.' Mot. Dismiss at 6.) Further, though plaintiff filed the state suit first, it has progressed no further than this one. (*Id.* at 7 (stating that the parties have yet to receive a briefing schedule from the state court for defendants' pending motion to dismiss).) Moreover, plaintiff's RCRA rights stem from federal law, a fact that "weighs heavily against abstention," *Tyrer*, 456 F.3d at 757 (quotation omitted), and can be vindicated only in federal court. *See, e.g., Blue Legs v. U.S. Bureau of Indian Affairs*, 867 F.2d 1094, 1098 (8th Cir. 1989); *City of Waukegan v. Arshed*, No. 08 C 2657, 2009 WL 458621, at *1 (N.D. Ill. Feb. 23, 2009). Thus, even if the two suits are parallel, abstention would not be appropriate.

**Merits**

To state a viable RCRA claim, plaintiff must allege, among other things not challenged by defendants, that the contamination on the Aetna property presents "an imminent and substantial danger to health or the environment." *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 972 (7th Cir. 2002). Aetna contends that plaintiffs' allegations to that effect (Compl. ¶¶ 32-34) are vitiated, as a matter of law, by the NFR.

In support of this argument, Aetna cites *St. Charles Manufacturing, Ltd. v. Whirlpool Corp.*, 398 F.3d 593 (7th Cir. 2005). The plaintiff in that case contracted to buy a piece of contaminated land from the defendant. *Id.* at 594. The contract required defendant to clean up the site and obtain an NFR for it from the IEPA. *Id.* at 594-95. Once it did so, the contract required plaintiff to release defendant from all claims related to the contamination. *Id.* at 595. Defendant obtained an NFR but, because plaintiff contended that the site was still contaminated, was sued nonetheless. *Id.*

Defendant moved for summary judgment on plaintiff's claim, arguing that it had fulfilled its contractual obligations by obtaining the NFR. *St. Charles Mfg. Ltd. P'ship v. Whirlpool Corp.*, No. 03 C 1917, 2003 WL 24010932, at *3 (N.D. Ill. Dec. 24, 2003). The trial court granted the motion, *id.* at *7, a decision that the Seventh Circuit affirmed saying:

> [T]he parties specifically contracted to let the IEPA decide whether the cleanup was adequate. Their contract provides that "[u]pon receipt of a 'Comprehensive' No Further Remediation letter from Illinois EPA in accordance with the terms hereof, St. Charles agrees to release Whirlpool from any and all claims in respect of pre-existing conditions at the Facility, and further agrees to indemnify Whirlpool with respect to any third party claims related to the Facility that may arise in the future." The parties put themselves in the agency's hands and agreed that Whirlpool's obligation would be satisfied by obtaining an NFR letter from the IEPA.

*St. Charles*, 398 F.3d at 596.

The *St. Charles* court did not, as Aetna seems to believe, hold that an NFR is conclusive proof that covered property does not pose a serious health or environmental threat. Rather, the court held that the NFR defeated plaintiff's contract claim because the parties expressly agreed that it would, *i.e.*, that defendant's clean up obligation would be satisfied once the NFR was issued. *Id.* Because *St. Charles* does not hold that an NFR conclusively proves property is hazard-free, it provides no basis for dismissing this suit.

## Conclusion

For the foregoing reasons, the Court denies defendants' motion to dismiss [doc. no. 13].

**SO ORDERED.**            **ENTERED:**

**June 9, 2009**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**